**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**AMON DEAN RICHARDS,**

> **Plaintiff,**

**vs.**                                                    **Case No. 4:13cv30-MW/CAS**

**JULIE JONES,
and T. CROWDER,**

> **Defendants.**

_____/

## <u>SECOND REPORT AND RECOMMENDATION</u>

Pending in this case is Defendants' motion for summary judgment,

ECF No. 49,[1] Plaintiff's pro se cross motion for summary judgment, ECF

No. 59.  After several docketing issues were noticed, the parties were given

the opportunity to confirm that the Court had all relevant documents

intended to be considered in ruling on the motions.  ECF No. 70.  They

have confirmed that all relevant documents are before the Court.  ECF

Nos. 71-72.

_____

[1] Each document filed in this case is now referenced "ECF No." (the Electronic
Case File) followed by the document number.

The documents to be considered in ruling on summary judgment are: Plaintiff's third amended complaint, ECF No. 32; Defendants' motion for summary judgment, ECF No. 49, supported by several additional, resubmitted exhibits, ECF No. 50; Plaintiff's cross summary judgment motion, ECF No. 59, supported by a large stack of exhibits (Exhibits A through PP) and three additional exhibits provided with Plaintiff's response (Ex. A consisting of 7 pages, Ex. B consisting of 1 page, and Ex. D consisting of 2 pages);[2] Plaintiff's response to Defendants' summary judgment motion, ECF No. 69; and Defendants' response in opposition to Plaintiff's motion, ECF No. 62.  Additionally, Plaintiff filed a reply, ECF No. 66, and Defendants filed a sur-reply, ECF No. 65.  The summary judgment motions are ready for review.

## I.    Legal standards governing a motion for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[2] The Clerk has filed the exhibits with "Plaintiff's response to Defendants' motion for summary judgment" and entered them on the electronic docket.  Exhibit A is located at ECF No. 69 at 36-42; Exhibit B is located at ECF No. 69 at 43; and Exhibit D is located at ECF No. 69 at 44-45.  (For Plaintiff's benefit, since he does not have access to the electronic docket, the final page of that docket entry is his mailing envelope.  ECF No. 69 at 46). There is no exhibit C.  The lengthy exhibits submitted with Plaintiff's own motion for summary judgment, ECF No. 59, were not scanned onto the electronic docket but hard copies of those exhibits are maintained with the file and have been reviewed.

entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus,

summary judgment is proper "after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett,

477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The

"party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact."  Celotex

Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must

then show[3] though affidavits or other Rule 56 evidence "that there is a

genuine issue for trial" or "an absence of evidence to support the

---

[3] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and
by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions
on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen
v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998)
(quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c),
(e))).  The nonmoving party need not produce evidence in a form that would be
admissible as Rule 56(e) permits opposition to a summary judgment motion by any of
the kinds of evidentiary materials listed in Rule 56(c).  Owen, 117 F.3d at 1236; Celotex,
477 U.S. at 324, 106 S. Ct. at 2553.

nonmoving party's case."  *Id.* at 325, 106 S. Ct. at 2554; Beard v. Banks,

548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case.

Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th

Cir. 2004) (citations omitted).  Additionally, "the issue of fact must be

'genuine'" and the non-moving party "must do more than simply show that

there is some metaphysical doubt as to the material facts."  Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348,

1356, 89 L. Ed. 2d 538 (1986) (other citations omitted).  "The mere

existence of some factual dispute will not defeat summary judgment unless

that factual dispute is material to an issue affecting the outcome of the

case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th

Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir.

2000)).

"[A]t the summary judgment stage the judge's function is not himself

to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202

(1986).  "[T]here is no issue for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party."

Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of

evidence" is not enough to refer the matter to a jury). The Court must

decide "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting

Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L.

Ed. 2d 202 (1986)). All "justifiable inferences" must be resolved in the light

most favorable to the nonmoving party, Beard, 548 U.S. at 529, 126 S. Ct.

at 2578 (noting the distinction "between evidence of disputed facts and

disputed matters of professional judgment."),[4] but "only if there is a

'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127

S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557

U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)). "Where

the record taken as a whole could not lead a rational trier of fact to find for

the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec.

Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

---

[4] Noting that deference must be given "to the professional judgment of prison administrators," the Court stated that "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." Beard, 548 U.S. at 530, 126 S. Ct. at 2578 (citing Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003)).

"Cross motions for summary judgment do not change the standard."

Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic &

Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007) (quoted in Ernie Haire

Ford, Inc. v. Universal Underwriters Ins. Co., 541 F. Supp. 2d 1295, 1297

(M.D. Fla. 2008).  "'Cross motions for summary judgment are to be treated

separately; the denial of one does not require the grant of another.'"

Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d

1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608

F.2d 431, 433 (10th Cir. 1979)) (quoted in Ernie Haire Ford, Inc., 541 F.

Supp. 2d at 1297-98)).

## II.    Procedural Issues and Exhaustion

Plaintiff's third amended complaint alleges that Defendant Crowder, a

prison official working in the institutional mailroom, rejected several items of

Plaintiff's mail.  ECF No. 32.  Plaintiff contends Defendant Crowder "did not

state a specific reason for the rejections as the rule requires," and rejected

his mail "without following the rules that would [have] allowed Plaintiff a

proper appeal . . . ."  Id. at 10.[5]  Plaintiff alleges that reasons given for

rejecting his mail were over broad.  Id. at 11.  He also claims that

---

[5] Plaintiff argued that Defendant Crowder used an incorrect procedure to deny
his mail.  ECF No. 32 at 14.  He claimed that Defendant Crowder did not offer "any
specificity," but "simply cit[ed] the subsection."  Id.

Defendant Crowder's rejection under Rule 33-501.401, F.A.C., was arbitrary, irrational, discriminatory, and nonspecific in violation of his First Amendment rights.  *Id.* at 13.

Plaintiff's third amended complaint specifically cited the following mail rejections: (1) three catalogs of models rejected on April 12, 2011; (2) rejection of December 2013 issue of GQ Magazine on November 20, 2013; (3) rejection of January 2013 issue of GQ Magazine on December 31, 2013; (4) rejection of February 2014 issue of GQ Magazine on February 21, 2014; and (5) additional rejections of catalogs at unspecified times. ECF No. 32 at 10-11.  At the motion to dismiss stage of litigation, Plaintiff voluntarily dismissed his claims concerning the rejection of Plaintiff's GQ Magazines (on November 20, 2013, December 31, 2013, and February 21, 2014), and the rejection of other catalogs after the original April 12, 2011, rejection date.  ECF No. 39 at 3.  Doing so left only Plaintiff's claims concerning the rejection of three "catalogs of models" on April 12, 2011, and, as clarified in the first Report and Recommendation, ECF No. 41 at 9, three rejections which occurred in February and March of 2011.  *See* ECF No. 32.

The items rejected in February and March of 2011 were Final Call, Vol. 30, No. 12, and Dungeons and Dragons, Weapons of Legacy.  ECF

No. 49 at 3 (citing to Exhibits B, C).  Defendants point out that Plaintiff

admitted in his deposition that he "never had a subscription to Final Call . . .

."  Ex. A (ECF No. 50-1 at 25).  He also acknowledged that he did not order

Dungeons and Dragons Weapons of Legacy."  *Id.*  He said that it was

ordered by another inmate.  *Id.*

Now, Defendants have once again raised exhaustion as an

affirmative defense.  ECF No. 49 at 10.  The issue of whether a prisoner

failed "to properly exhaust available administrative remedies under the

PLRA should be treated as a matter in abatement."  Bryant v. Rich, 530

F.3d 1368, 1374 (11th Cir. 2008) (cited in Turner v. Burnside, 541 F.3d

1077, 1082 (11th Cir. 2008)).  Such a "defense is treated 'like a defense for

lack of jurisdiction,' although it is not a jurisdictional matter."  Bryant, 530

F.3d at 1374 (cited in Turner, 541 F.3d at 1082).

The Prison Litigation Reform Act [PLRA] mandates that "[n]o action

shall be brought with respect to prison conditions under section 1983 of this

title, or any other Federal law, by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are

available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is a

mandatory requirement.  Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th

Cir. 1998).  "Requiring exhaustion allows prison officials an opportunity to

resolve disputes concerning the exercise of their responsibilities before being haled into court."  Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007).[6]

Defendants "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies."  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (relying on Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.")).  Factual disputes concerning the exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1373-74, 1376.

Defendants contend that Plaintiff "failed to exhaust his administrative remedies regarding the publications rejected in February and March of 2011" for two reasons: first, Defendants assert that Plaintiff did not exhaust

---

[6] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances.").

because he "did not seek to initiate rule-making concerning Rule 33-501.401"[7] and, secondly, because he did not file grievances concerning the rejection of those publications.  ECF No. 49 at 12.  Defendants point to an absence of evidence that Plaintiff filed grievances concerning those publications.  ECF No. 49 at 10-13 (citing to Exhibits B and C).

Plaintiff, however, says he exhausted administrative remedies and points to his own Exhibits N and O.  (ECF No. 69 at 3 (citing to ECF No. 59 exhibits).  Plaintiff further argues that "initiation of rulemaking is not a requisite to challenging any rule as that is not promulgated in the Department grievance procedures."  ECF No. 59 at 3.

The exhibits cited by Plaintiff are broad challenges to the Department's ban on magazines and other printed material that present nudity or sexual conduct.  ECF No. 59, Exhibits N-O.  None of those exhibits explicitly identify that Plaintiff is challenging the rejection of two specific pieces of mail on a specific date.

Plaintiff submitted additional grievances as evidence which has been reviewed, but none of those grievances specifically challenge the rejection of Final Call, Vol. 30, No. 12, or Dungeons and Dragons, Weapons of

---

[7] Defendants argue that to the degree he wants to challenge the definition of the word "publication" under the Florida Administrative Code, he "is attempting to alter a Department rule and must initiate rulemaking."  ECF No. 49 at 12.

Legacy.  ECF No. 49 at Ex. E.  Rather, those grievances demonstrate

Plaintiff exhausted administrative remedies as to the April 12, 2011,

rejections only.  *Id.*  In light of the fact that Plaintiff's complaint alleged that

Defendant Crowder rejected his mail "without using the correct procedure"

which deprived him of "the opportunity of having the rejections properly

reviewed," ECF No. 32 at 14, it was imperative that Plaintiff submit a

grievance concerning those specific rejections such that his argument

could be considered in the first instance by the Department of Corrections.

Plaintiff did not do so.  Thus, because Plaintiff did not exhaust

administrative remedies as to the February and March 2011 publications of

Final Call and Dungeons and Dragons, those First Amendment claims

should be dismissed.

## III.   Untruthful Financial Disclosure

Defendants also contend that Plaintiff's affidavit of indigency is

incorrect and, because that is an abuse of the judicial process, this case

should be dismissed.  ECF No. 49 at 8-10.  Defendants contends that

Plaintiff admitted "in his recent deposition that he has his funds deposited

in the account of another inmate so he can bypass having to pay his liens."

*Id.* at 8 (citing Ex. A and Ex. G).  Plaintiff said, "I usually get my money sent

to somebody else" because he was unhappy with the way the Department

of Corrections deducts money from inmate accounts to pay for liens.  ECF
No. 50-1 at 6-7.  Plaintiff accesses funds by having another inmate go to
the canteen to make purchases for him and Plaintiff then pays a
percentage to the other inmate for letting him use his inmate trust account.
*Id.* at 16.  Plaintiff also acknowledged in his responses to interrogatories
that he "would have his aunt buy a money order and order catalogs etc. for
him, which was how he ordered the catalogs rejected by Defendant
Crowder." Ex. G (ECF No. 50-6 at 4).  Plaintiff admitted he did so to avoid
the Department's practices[8] when a lien is placed on an inmate account.
*Id.* at 4-5.

The inmate trust fund account statements submitted with Plaintiff's in
forma pauperis motion, ECF No. 5-2, demonstrate that Plaintiff had zero
funds in his account and a total of $2,571.49 in liens.  *Id.* at 1.  Plaintiff's in
forma pauperis motion, ECF No. 5, was granted and he was permitted to
proceed without payment of an initial filing fee.  ECF No. 6.  Despite
Plaintiff's claim in his deposition that the "filing fee been paid off already
[sic]," Ex. A (ECF No. 50-1 at 6), no payments have been made and
Plaintiff still owes the entire filing fee.

---

[8] Specifically, Plaintiff pointed out that under Department of Corrections
practices, "state prison litigation liens take 100% of all deposits/funds until paid."  ECF
No. 69 at 36-38.

Pursuant to 28 U.S.C. § 1915(a)(2), a prisoner must file an affidavit and a trust fund account statement.  Based on those filings, the Court assesses and, when funds exists in the prisoner''s inmate account, collects partial payments toward the filing fee.  28 U.S.C. § 1915(b).  In one sense, the affidavit and filing fee were correct because Plaintiff did not, at least at the time of case initiation, have any funds in his inmate account.  On the other hand, the Court does not condone an unethical practice of having money sent to other inmates to avoid payment of liens, but in practical terms, the Court has no way to police that practice for purposes of making in forma pauperis determinations.  The Court has not been informed that such a practice violates departmental rules.  If it does, resolution falls on the Department of Corrections but summary judgment should not be granted because of that practice.

## IV.   The Relevant Rule 56(e) Evidence

On April 12, 2011, Defendant Crowder rejected three (e) catalogs that Plaintiff had ordered by checking two (2) boxes which state the basis for the rejection.  ECF No. 59, Exhibits B-D.  For each item of mail rejected, Plaintiff received an "Unauthorized Mail Return Receipt."  *Id.*  The Receipts identify that the mail was returned to "M.R.S. Photos" (address included), Ex. B, "FIYA GIRLS" (address included), Ex. C, and "M.F.P." (address

included), Ex. D.  ECF No. 59, Exhibits B-D.  Page two of the Receipts has

two boxes checked which indicate the reasons the mail was returned to the

sender.  *Id.*  The first checked box states:

> Pictorially depicts actual or simulated sexual intercourse; sexual
> bestiality; masturbation; sadomasochistic abuse; actual lewd
> exhibition of the genitals; actual contact with a person's unclothed
> genitals, pubic area, buttocks, or, if such person is a female, breast
> with the intent to arouse or gratify the sexual desire of either party; or
> any act or conduct which constitutes sexual battery or simulates that
> sexual battery is being or will be committed.

*Id.* The second box states:

> Presents nudity is such a way as to create the appearance that
> sexual conduct is imminent, i.e., display of contact or intended
> contact with genitals, pubic area, buttocks, or female breasts orally,
> digitally or by foreign object, or display of sexual organs in an
> aroused state.

*Id.* There is a section on the bottom of the second page marked "Other" in

which Defendant Crowder typed:

> Nudity, partial nudity, see through clothing or touching in a sexual
> manner is not allowed.  Sexual organs in an aroused state is not
> allowed.  Bare buttocks is not allowed.  Nude baby photos are not
> allowed.  Inappropriate photos will be returned to sender.

*Id.* Each of the three Receipts provided to Plaintiff were on DC2-521

forms.  Exhibits B-E, ECF No. 59.

Defendant Crowder is employed by the Florida Department of

Corrections as a "Senior Clerk" and is assigned to work at Hamilton

Correctional Institution.  Ex. D (ECF No. 49-4 at 1).  She is assigned to review the regular incoming mail.  *Id.*  She is "not assigned to review publications."  *Id.*  She states in her declaration that she does "not apply Rule 33-501.401, F.A.C. to [her] review of mail as it is not the proper rule to apply" for regular incoming mail.  *Id.*  She states that she applies "Rule 33-210.101, F.A.C." to her review the mail.  She explains that a determination may be made as to "what rule is being applied to a particular piece of rejected or impounded mail by looking at the form being sent to the sender."  *Id.*  "A staff member [who] rejects an item of mail under Rule 33-210.101 uses form DC2-521, Unauthorized Mail Return receipt."  *Id.*  "A staff member that impounds or rejects an item of mail under Rule 33-501.401 uses form DC5-101, Notice of Rejection or Impoundment of Publications."  *Id.*

Defendant Crowder also states that on April 12, 2011, she "reviewed and rejected incoming mail from M.F.P.," which was "mailed in a standard envelope with no indication it was from a publishing house."  ECF No. 49-4 at 1.  The envelope contained two pages, each of which had "approximately 60 small photos per page."  *Id.*  Defendant Crowder "considered [those] two pages of photos to be fliers" and assumed the photos were being offered to sale.  *Id.*  Defendant Crowder advised that

because three of the photos showed "inappropriate touching and display of the genitals, the mailing was rejected."  ECF No. 49-4 at 1-2.  Rejection "was pursuant to Rule 33-210.101" and the mail was returned to the sender.  *Id.* at 2.  She does not remember, nor is there documentation, of the other two mailings sent to Plaintiff in April of 2011.  *Id.*  She does, however, assert that if other fliers "were similar to the M.F.P. fliers, they would have been rejected pursuant to Rule 33-210.101."  *Id.*

Defendant Crowder states that she "does not consider fliers of photographs to be catalogs."  *Id.*  Catalogs "impounded for a rule violation . . . go to the Literature Review Committee for review."  *Id.*  "Fliers of photographs do not go to the Literature Review Committee for review."  *Id.*  Fliers of photographs "are reviewed under Rule 33-210.101 as stated in Rule 33-501.401(1).  *Id.*  Defendant Crowder attached copies of the fliers which were "rejected on April 12, 2011[,] along with a . . . copy of the DC2-521 [form] provided to the sender and" Plaintiff.  *Id.*

Plaintiff received the three rejections and filed a grievance which argued that although Florida statutes allow the Department to prohibit content with nudity or sexual conduct, Defendant Crowder should not have rejected the "catalogs" which he claimed "were only pictures of girls in

lingerie, bikinis, g-strings, etc."  ECF No. 59, Ex. E.[9]  His grievance was

denied by Defendant Crowder who explained that "some of the photos

[were] of nude females and some are touching themselves in a sexual

manner."  *Id.*  Plaintiff's appeals were also denied.  *Id.*

Evidence in this case includes an affidavit from M. Morrison, another

employee of the Department of Corrections who is the Library Services

Administrator.  Ex. E (ECF No. 50-4).  Morrison explains that publications

are defined under Rule 33-501.401(2)(h).  *Id.* at 1.  Photographs are listed

under the Routine Mail Rule, Rule 33-210.101.  *Id.*  That Rule provides that

photographs are "counted toward the 15 page additional materials

limitation."  *Id.*  "Nude photographs or photographs that reveal genitalia,

buttocks, or the female breast will not be permitted."  *Id.*  The Rule also

does not permit "commercial photographs" and defines those as

photographs which are "produced in bulk that are not actual photographs,

but are computer or printer copies usually produced for sale or purchase."

*Id.*; *see also* FLA. ADMIN. CODE R. 33-210.101(2)(c).

---

[9] Contrary to Plaintiff's assertion in his summary judgment motion, ECF No. 59 at 4, he did not argue "that the catalogs were publications."  He said the asserted reasons (nudity) were false and he claimed the rejections were "reprisal for grievances" he had previously filed.  ECF No. 59, Ex. E.

Morrison also advises that "[f]liers containing small representations of photographs for sale are not considered a 'publication' and need not be reviewed by the Literature Review Committee before being rejected.  ECF No. 50-4 at 2.  "Because inmates are not allowed to purchase commercial photographs, fliers with sample photographs for sale are not allowed." *Id.*

Defendant Crowder also submitted the affidavit of Randy Agerton, a Department of Corrections employee who serves on the Literature Review Committee.  Ex. F (ECF No. 50-5).  Agerton states that inmates may receive "Admissible Reading Material" such as "publications" and "other printed materials . . . provided that the items are received directly from a publisher, mail-order distributor or bookstore."  *Id.* at 2.  "However, single photographs, sets of photographs, and fliers of multiple photographs for sale are not reasonably defined as reading material and inmates are not allowed to received them as 'Admissible Reading Material.'" *Id.*

Agerton states that Plaintiff "received a packet of sample photographs for sale from . . . M.F.P."  ECF No. 50-5 at 2.  That mail was rejected because "the photographs depicted a person or persons who were unclothed and/or depicted acts defined as sexual conduct and inadmissible per Rule 33-210.101."  *Id.*  The Department's position, "based on its experience and knowledge of the impact of such items on its ability to

safely manage the incarcerated population" is that such pictures should not be allowed "for receipt by inmates in routine mail." *Id.* Agerton opines that "[p]ictures of this type constitute a valuable trading commodity that inmates will use for bartering." *Id.* "Such bartering can and will result in theft and violence in the volatile prison environment where the potential for such behavior is inherent as established by the past acts of a large portion of the population." *Id.*

Agerton states that the pictures are used "by inmates to decorate cell and living area walls and property storage lockers." *Id.* Female staff are then exposed to such pictures and "[m]any find such photographs offensive." *Id.* "The propensity for inmates to harass female officers by calling attention to such pictures in a graphically suggestive manner and even make comparisons to the officers themselves adds to the concerns we legitimately hae for the working environment provided for these officers and our responsibility to make it as free as possible of sexually offensive and, therefore, hostile elements." *Id.*

"Pictures of the type at issue here serve no rehabilitative purpose." *Id.* Indeed, "a significant body of evidence" shows that exposure to pornography "can have a significant detrimental impact on any efforts to interdict the criminal behavior of the numerous sex offenders confined in

our institutions by reinforcing their deviant belief about women as objects and further desensitizing them to the aggressive acts that they have proven themselves willing to commit." *Id.*

The evidence reveals that Plaintiff was provided an unauthorized mail return receipt on three occasions on April 12, 2011, for "M.R.S. Photos" (return address of Mastic NY), "FIYA GIRLS" (return address of Houma, LA), and "M.F.P." (return address of Pittsburg, PA).  Exhibits B-D (attachment to ECF No. 59).  He submitted a copy of the meeting minutes from the Literature Review Committee which stated the publications reviewed on October 19, 2012, and listed those approved and those rejected.  Ex. R (attachment to ECF No. 59).  Under the sub-heading "Undated/Unnumbered Periodical Publications," the minutes state that four editions (#1, 3, 4, and 17) of FIYA GIRLS was approved.  *Id.*  Plaintiff has also shown that he "received photo catalogs at the same institution . . . ." *See* Plaintiff's Exhibits W, X, and Y (attachment to ECF No. 59).  Plaintiff has shown that those materials are described by the senders as a "catalog" of photos.  *Id.*  They are often advertised as "catalogs."  Ex. AA (attachment to ECF No. 59).

**Analysis**

**A.    First Amendment**

The First Amendment,[10] made applicable to the States through the Fourteenth Amendment, protects such rights as the free exercise of one's religion and the freedom of speech.  Inmates retain those First Amendment rights not incompatible with prison life.  Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974); Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979).  Some rights must necessarily be limited by incarceration, Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948), but inmates "clearly retain protections afforded by the First Amendment.  Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974).  Under the "Turner rule," adopted by the Supreme Court in Turner v. Safley, 482 U.S. 78, 85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), when a prison regulation or rule infringes on an inmate's constitutional rights, it is judged a reasonableness standard.  Richards v. England, No. 207-CV-758-FTM-29SPC, 2008 WL 5110793, at *4 (M.D. Fla. Dec. 1, 2008).  The *Turner rule* holds that a

---

[10] The First Amendment of the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. CONST. Amend. I.

prison regulation "is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89; *quoted in* Richards, 2008 WL 5110793, at *4. Thus, under Turner, a four-factor analysis is used "to determine if a prison regulation limiting the First Amendment is reasonably related to a legitimate penological interest." Perry v. Sec'y, Florida Dep't of Corr., 664 F.3d 1359, 1365 (11th Cir. 2011).

Before proceeding to analysis under Turner, it must be acknowledged that when ruling on the motion to dismiss, the undersigned noted that Plaintiff appeared to be challenging Rule 33-501.401 because he claimed that "Defendant Crowder should have followed that Rule and not Rule 33-201.101." ECF No. 41 at 6-7. At the time it was unclear which Rule provision was used to reject Plaintiff's mail because the two rules contain nearly identical language. *See* ECF No. 41 at 6-8. It is now clear, however, that Plaintiff did not include a challenge to Rule 33-210.101 in his complaint. *See* Ex. A (ECF No. 50-1 at 9). His complaint specifically cited only Rule 33-501.40. ECF No. 32. In all likelihood Plaintiff did not include such a challenge because he previously litigated First Amendment claims pertaining to Rule 33-210.101(c) in Richards v. England, No. 207-CV-758-FTM-29SPC, 2008 WL 5110793, at *2 (M.D. Fla. Dec. 1, 2008). Review of the summary judgment materials makes it apparent that Plaintiff is fully

aware that he is challenging only Rule 33-501.401 in this action. *See* Ex. A (ECF No. 50-1 at 8-9). However, Plaintiff stated in his response to Defendant's summary judgment motion that he would like to "add it as a new claim" since the two rules share the same language. ECF No. 69 at 3. He also points out that he previously stated that he "intended to challenge both the sections of Rule 33-210.101 . . . and Rule 33-501.401 . . . ." *See* ECF No. 39 at 6. Plaintiff did not, however, file a motion to amend the complaint and he did not submit a copy of the proposed amended pleading with such a motion as required.[11] Document 39 was an amended response to Defendants' motion to dismiss and motion for partial voluntary dismissal.

In some ways it seems immaterial which of the two Rules Plaintiff is challenging in this case because they are nearly identical. Rule 33-201.101 pertains to "Routine Mail" and Rule 33-501.401 pertains to "Admissible Reading Material." The similarity of two Rules is evident when compared side by side:

Rule 33-210.101 provides:

  (11) Outgoing or incoming mail shall be disapproved for mailing or delivery to

Rule 33-501.401 provides:

  (3) Inmates shall be permitted to receive and possess publications per

---

[11] Former Rule 15.1, which was in effect throughout this litigation until December 1, 2015, stated: "When leave is sought to amend a pleading pursuant to a motion, the motion and the proposed amended pleading shall each be filed and docketed separately. The proposed amended pleading shall not take effect unless and until the motion to amend is granted." N.D. Fla. Loc. R. 15.1.

the inmate if any part of it: . . .

(i) Pictorially depicts sexual conduct as defined by Section 847.001, F.S., as follows:

1. Actual or simulated sexual intercourse;

2. Sexual bestiality;

3. Masturbation;

4. Sadomasochistic abuse;

5. Actual contact with a person's unclothed genitals, pubic area, buttocks, or, if such person is a female, breast;

6. Any act or conduct which constitutes sexual battery or simulates that sexual battery is being or will be committed.

(j) Presents nudity in such a way as to create the appearance that sexual conduct is imminent, i.e., display of contact or intended contact with genitals, pubic area, buttocks or female breasts orally, digitally or by foreign object, or display of sexual organs in an aroused state.

Effective date: May 9, 2010.

terms and conditions established in this rule unless the publication is found to be detrimental to the security, order or disciplinary or rehabilitative interests of any institution of the department, or any privately operated institution housing inmates committed to the custody of the department, or when it is determined that the publication might facilitate criminal activity. Publications shall be rejected when one of the following criteria is met: . . .

(i) It depicts sexual conduct as follows:

1. Actual or simulated sexual intercourse;

2. Sexual bestiality;

3. Masturbation;

4. Sadomasochistic abuse;

5. Actual lewd exhibition of the genitals;

6. Actual physical contact with a person's unclothed genitals, pubic area, buttocks, or, if such person is a female, breast with the intent to arouse or gratify the sexual desire of either party;

7. Any act or conduct which constitutes sexual battery or simulates that sexual battery is being or will be committed.

(j) It depicts nudity in such a way as to create the appearance that sexual conduct is imminent, i.e., display of contact or intended contact with a person's unclothed genitals, pubic area, buttocks or female breasts orally, digitally or by foreign object, or display of sexual organs in an aroused state.

Effective date: October 1, 2010.

Nevertheless, despite the near identical language of the two rules, an important point is worth noting.  Rule 33-501.401 states:

> The provisions of this section shall apply to all publications, including books, newspapers, magazines, journals and diaries, calendars and any other printed materials addressed to a specific inmate or found in the personal property of an inmate. Personal correspondence and *photographs are not publications. No photograph will be approved and issued to an inmate as admissible reading material. Policy governing the receipt of photographs by inmates through the mail is established in Rule 33-210.101, F.A.C.*

Rule 33-501.401(1) (emphasis added).  Despite Plaintiff's argument that the wrong rule was applied in rejecting his three items of mail on April 12, 2011, the evidence reveals that Rule 33-210.101 was applied because mail which was rejected consisted of an envelope containing two pages, each page of which contained "approximately 60 small photos per page."  The very rule Plaintiff cites that should have been applied, Rule 33-501.401, specifically states that "the receipt of photographs by inmates through the mail is" covered under Rule 33-210.101 and provides that photographs are not issued as "admissible reading material."  The reason is obvious - photographs are viewed, not read.  Accordingly, it was appropriate for Defendant Crowder to review the mail under Rule 33-210.101, which the evidence reveals she did.

Additionally, to the degree Plaintiff argues that the items returned in April 2011 were catalogs and should have been reviewed by the Committee, that argument should be rejected.  It is true that a catalog may

be a listing of items.  It is also true that the senders themselves called what they were mailing as catalogs.  Yet it is also true that what was mailed were pages of photographs.[12]  Under the Department's own Rule 33-501.401(1), photographs are handled under the policy established in Rule 33-210.101.  That is the way Plaintiff's mail was handled.  Exhibits B-D.

Notwithstanding that Plaintiff has already litigated his challenge to Rule 33-210.101 in Richards v. England, No. 207-CV-758-FTM-29SPC, 2008 WL 5110793, at *3 (M.D. Fla. Dec. 1, 2008), this Court has independently reviewed the Turner factors as they pertain to the prohibition on photographs that depict nudity and sexually provocative photographs which come within the definition of FLA. ADMIN. CODE R. 33-210.101(11)(i) and (j), which is also nearly identical to Fla. Admin. Code R. 33-501.401(3)(i) and (j).  "The first factor requires a rational connection between the prison regulation and the legitimate penological objective." Turner, 482 U.S. at 89, 107 S.Ct. at 2262 (quoted in Perry, 664 F.3d at 1365-66.  Defendants point out that prohibitions on nude and sexually suggestive photographs have consistently been upheld by courts due to

---

[12] It is also immaterial that Plaintiff previously received "catalogs at the same institution . . . from the same company . . . ." It has not been shown that mail from a company has been banned.  Rather, it is photographs which depict the conduct described in Rule 33-210.101(i) and (j) that is banned.

concerns over the security of the institutions and safety to both inmates and prison officials.  ECF No. 49 at 17-18.  Permitting such materials inside prison would necessarily result in their distribution from inmate to inmate.  Creating a sexually charged atmosphere in that setting would be detrimental to the safety of other inmates and staff.  It would inevitably lead to greater violence than already exists and would not be beneficial to the prison environment.  The safety of prison facilities weighs strongly in favor of upholding the prohibition of Rule 33-210.101(i), (j).  Indeed, the Supreme Court has upheld restrictions on the admission of materials into a prison facility that have been determined to be "detrimental to the security, good order, or discipline of the institution . . . ."  Thornburgh v. Abbott, 490 U.S. 401, 416, 109 S. Ct. 1874, 1883, 104 L. Ed. 2d 459 (1989) (upholding that "Turner 's reasonableness standard is to be applied to" regulations of the Federal Bureau of Prisons which authorized the rejection of certain publications found to be detrimental to institutional security).

The second Turner factor requires consideration of whether "there are alternative avenues for exercising the right."  Perry, 664 F.3d at 1366 (citing Turner, 482 U.S. at 90, 107 S.Ct. at 2262).  The evidence reveals Plaintiff has other avenues for obtaining similar mail to the extent it does not depict nudity or sexual conduct.  He has presented evidence of other

"catalogs" of photographs he has been able to receive.  He has also shown that he can receive photographs, so long as they do not violate the ban on nudity or sexual conduct.  Rule 33-210.101(2)(c)[13] permits inmates to receive photographs, within a 15 page limit.  Because Plaintiff has other means of expression, the second factor weighs in favor of upholding the rule.

The third factor requires the court to evaluate the impact on guards, inmates, and prison resources.  Defendants have shown that allowing photographs which are banned by Rule 33-210.101 would create a hostile work environment for female staff.  It would also impact resources as violence would escalate due to inmate bartering and sharing such photos with other inmates.  This third prong favors the Defendants as well.

"Finally, the court must decide whether the rule is an exaggerated response by looking at possible alternative means . . . ."  <u>Perry</u>, 664 F.3d at 1367.  Considering that inmates are allowed sexually suggestive photographs and that such mail is subjected to individual scrutiny rather than a broad ban, the rule is not an exaggerated response.  Plaintiff has

---

[13] That Rule states: "Photographs will be counted toward the 15 page additional materials limitation. Nude photographs or photographs that reveal genitalia, buttocks, or the female breast will not be permitted. Polaroid photographs will not be permitted. Photographs will not exceed 8" x 10"."  FED. R. CIV. P. 33-210.101(2)(c) (2010).

not pointed "to an alternative that fully accommodates [his] rights at de

minimis cost to valid penological interests . . . ."  Turner, 482 U.S. at 91,

107 S. Ct. at 2262.  The rule challenged in this case is a reasonable

restriction on inmate rights and is supported by a legitimate governmental

interest.

To the degree Plaintiff has challenged the rejections as over broad,

Plaintiff has not submitted evidence which reveals that the three piece of

mail returned and not delivered to him in April 2011 did not include

photographs that contained sexual conduct.  His challenge is primarily

based on the fact that two boxes were checked indicating numerous

possible violations.  That overlooks the fact that on each Return Receipt,

Defendant Crowder included a statement which more readily explained the

basis for the rejection.  There is insufficient evidence to demonstrate that

the rule has been applied in an over broad manner as it pertains to nudity

and sexual conduct.[14]  Summary judgment should be granted in favor of

Defendants on Plaintiff's First Amendment claim.

---

[14] To the degree Plaintiff argues that some items are rejected but are otherwise available in the prison library, see ECF No. 59 at 7-19, those issues are not before this Court as they are unrelated to nudity and photographs of sexual conduct.

**B.    Due Process**

It has long been established that a "decision to censor or withhold delivery of a particular [piece of mail] must be accompanied by procedural safeguards."  Procunier v. Martinez, 416 U.S. 396, 417, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974) (overruled by Thornburgh v. Abbott, 490 U.S. 401, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989).  The Eleventh Circuit utilized the Martinez standard for determining if rejected correspondence of a personal nature is accompanied by proper procedural safeguards. Martinez, 416 U.S. at 417–18, 94 S.Ct. at 1814 (relied on in Perry, 664 F.3d at 1367 (stating "that both prisoners and their correspondents have a liberty interest in uncensored communication by letter; therefore, any decision to censor or withhold delivery of letters must be accompanied by procedural safeguards.")).  The Martinez procedural safeguards are: "(1) the inmate must receive notice of the rejection of a letter written by or addressed to him; (2) the author of the letter be given 'reasonable opportunity to protest that decision,' and (3) 'complaints be referred to a prison official other than the person who originally disapproved the correspondence.'"  Martinez, 416 U.S. at 418–19, 94 S.Ct. at 1814 (quoted in Perry, 664 F.3d at 1368, n.2 (11th Cir. 2011).

Here, the evidence reveals Plaintiff was provided notice of the rejected mail and the mail was returned to the sender as both Plaintiff and the senders were provided Unauthorized Mail Return Receipts which stated the reason the mail was rejected.  Nothing was received from the senders challenging the returned mail.  Plaintiff had opportunities to challenge the returned mail.  The evidence reveals his formal grievance and appeal were reviewed by persons other than Defendant Crowder. There was no requirement that his mail first be reviewed by the Committee because Rule 33-501.401 was not applicable.  Summary judgment should be granted in favor of Defendants as to the Due Process claim as well.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, ECF No. 49, be **GRANTED**, that Plaintiff's motion for summary judgment, ECF No. 59, be **DENIED,** and judgment entered in Defendants' favor on all claims.

**IN CHAMBERS** at Tallahassee, Florida, on February 29, 2016.


 s/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.